[Civ. No. 8920. Third Dist. Feb. 26, 1957.]

M. BROWN, Respondent, v. FRIESLEBEN ESTATE COMPANY (a Corporation), Appellant.

Winston Churchill Black and Rich, Fuidge & Dawson for Appellant.

Clewe, Blade & McDonald and Manwell & Manwell for Respondent.

VAN DYKE, P. J. — Plaintiff-respondent brought this action to recover a judgment for the reasonable value of legal services rendered to defendant-appellant. We shall refer to appellant as Friesleben. Respondent sued as an assignee for collection. She obtained a judgment in the sum of $10,000, together with interest thereon at the rate of 7 per cent per annum from a date prior to judgment, the interest amounting to $1,625.49. It may be stated here it is conceded on appeal that interest was not allowable prior to the entry of judgment, and, therefore, if the judgment be affirmed, it is to be modified to that extent.

The following appears from the record. Friesleben is a corporation of the kind sometimes referred to as a family corporation. Five-sevenths of the issued stock was owned by Mrs. Alma M. Friesleben, a woman of advanced age, one-seventh was owned by her two grandchildren, and the remaining seventh by a person unidentified by the record. Winston Churchill Black, hereinafter called Black, is an attorney at law, first employed by Friesleben in April or May of 1944. He has since been its attorney, a director and the secretary of the corporation. He testified that, owing to the advanced age of Mrs. Friesleben, decisions with respect to Friesleben affairs were generally arrived at by him in consultation with the minority stockholders, and that Mrs. Friesleben's health was such that she was not active in corporation matters. In May of 1944 the sole asset of Friesleben was a 1,700-acre

ranch near Marysville. Friesleben, in that month, entered into an agreement for the sale of the ranch to Arnold Christenson, hereinafter called Christenson, and a few days later made another contract for the sale of the same ranch to Kesterson Lumber Corporation, hereinafter called Kesterson, which corporation, as purchaser, went into possession. Christenson thereupon brought suit for the specific performance of his prior contract and for damages suffered by him through the letting into possession of Kesterson. After prolonged litigation, Christenson prevailed, the judgment awarding him specific performance and damages applied by way of a reduction of the amount unpaid on the purchase price. Friesleben appealed from that judgment. Shortly thereafter, Kesterson filed suit against Friesleben to recover the sum of $50,000 which it had paid as a down payment on its purchase agreement with Friesleben. Thereupon, a settlement was made between Christenson and Friesleben, pending appeal. Ray Manwell and Ernest Clewe had been, and were at the time of the settlement, attorneys for Christenson and had represented him in his suit against Friesleben. Black and Senator W. P. Rich had been and were the attorneys for Friesleben. They had filed an answer and cross-complaint in the Kesterson suit wherein they sought to charge Kesterson with the profits from its possession of the ranch and with the value of personal property disposed of. It was anticipated that Friesleben might recover on this cross demand a sum large enough to offset the $50,000 down payment which Kesterson was demanding and also to obtain a money judgment for an amount over and above the offset. Christenson and Friesleben settled their case by Christenson's granting a reduction in his damage award and by Friesleben's promising to pay him one-half of any sum it might recover from Kesterson above Kesterson's $50,000 demand. A few weeks after the settlement Manwell and Clewe agreed with Christenson as to the amount of their fees for their services to him in his suit against Friesleben. He agreed to pay them an amount in cash and, in addition, to assign over to them whatever he should receive from the ultimate outcome of Friesleben's cross-action against Kesterson. The assignment was executed. Manwell and Clewe had, during this time, represented the general interests of the minority stockholders in Friesleben and in that sense represented parties interested in the outcome of the Kesterson litigation. It was arranged between them and Black that, for these minority stockholders, they would file a complaint

in intervention in the Kesterson suit. They did this. It was further understood, however, that in the matter of this intervention Friesleben would be under no obligation to compensate them for any services they performed for their stockholders. In due course, upon motion by Kesterson, the court struck the complaint in intervention from the files. Thereupon, Manwell and Clewe, for their clients, requested permission from Black to join as counsel for Friesleben in the Kesterson litigation. Consent was given, but upon the agreement again that for such activities Friesleben would not be obligated to pay them. From that time on their names appeared as attorneys of record on all filings made in the case. That was the situation when, on December 16, 1946, the parties and their counsel in the Kesterson litigation appeared in court for the trial of that action. Manwell and Clewe testified that, although they wanted for their minority stockholder clients to sit in on the trial of the action, they did not expect to participate in the trial work and had not undertaken to do so. They testified further that, before the trial opened, Black and Rich requested them to actively participate in the trial and to try the case with the exception of an opening statement to be made by Rich and the examination by Rich of Black as a witness. This request, they said, was based upon the intimate knowledge of the facts and the issues gained by Clewe and Manwell in conducting the Christenson litigation, it appearing that in particular the cross demand against Kesterson involved generally the same proof used by Christenson in proving his demand against Friesleben. The trial began, and the plan of trial agreed upon was followed. Manwell and Clewe testified in this action that shortly after the trial began, they broached the matter of compensation from Friesleben in view of the changed aspect of their participation, and that Black agreed they would be paid by Friesleben. Manwell testified that a little later in the trial he asserted to Black that their compensation should be substantial, and that Black concurred. The Kesterson litigation was prolonged, the issues, however, revolving almost entirely around the cross demand against Kesterson. After a three-day trial upon the matter of whether or not Friesleben had a valid cross demand, the trial court so ruled and ordered an accounting. Thereupon, the trial was resumed at a later date. An account was taken, and the cross demand was established in a sum which exceeded the $50,000 demand of Kesterson by $5,820.12 with interest. Under the settlement agreement between Christenson and

Friesleben, one-half of the amount recovered was payable to Christenson. And, by virtue of his assignment, Clewe and Manwell were entitled to receive it as a part of his payment to them of the attorneys' fees he had agreed upon. The judgment of Friesleben against Kesterson was affirmed on appeal, and ultimately one-half of the amount awarded in excess of the $50,000 demand of Kesterson, the half amounting then to $4,600.80, was paid to Clewe and Manwell by Black.

The pleadings in this action were in common count form. The complaint was entitled "Complaint for Money Due for Services Rendered," and it generally alleged the employment, the rendition of services thereunder, the reasonable value thereof and nonpayment. The answer consisted of general denials. No affirmative defenses were specially pleaded.

Friesleben asserts, in support of its appeal, that there was no testimony that anyone had authority on its behalf to hire Manwell and Clewe. The contention is without merit. It is undisputed on the record that Manwell and Clewe became attorneys of record in the case by arrangement between themselves and Black, and that they remained so throughout the proceedings preliminary to trial, throughout the trial and throughout the appeal. Black testified that he had been, throughout the time material here, a director and the secretary of the corporation, and that due to the inability of the principal stockholder to participate in corporation affairs, he had customarily made decisions in such matters by consultation with minority stockholders. Not only was he attorney for the corporation in respect of the Kesterson litigation, but he was its general counsel also. It is apparent from the record that he was chief counsel in the Kesterson litigation. Finally, when the issue of employment arose after the litigation was concluded, Black wrote to Clewe: "The corporation appointed me to represent them in the action and authorized me to employ additional counsel. I got specific authorization to have you and Ray join with counsel on the basis that I discussed with you in Oroville." There is ample support for the implied finding of the court that Black, in his plural capacities of general counsel, director-secretary of the corporation and chief counsel in the action, participated in an arrangement whereby Manwell and Clewe became counsel for the corporation along with himself and Rich, even though it also appears that the first arrangements were that Friesleben should not be liable to pay for their services. The same considerations justified the trial court in the further implied

finding that, based upon the changed relationship before the trial began, Black agreed for Friesleben that Manwell and Clewe should be reasonably compensated for their work from that time forward. Presumably, the directors of the corporation possessed the knowledge of the director-secretary and general counsel; and, of course, we must accept the trial court's determination that, in respect of the change in relationship and the agreement for compensation, the facts were as testified to by Manwell and Clewe. So accepting that determination, it is presumed that Black acquainted the corporate officers with the arrangements he had made, just as appears from his letter. It also appears that no question of the legality of employment was raised against Manwell and Clewe by anyone for the corporation until after the full rendition of the services. Finally, on this issue, and as appears more fully hereafter, Black claimed, for the corporation, to have made with them binding arrangements for their payment by an accord. Under such circumstances the record substantially supports the trial court's determination that Manwell and Clewe were employed for the corporation, and that the corporation agreed to pay the reasonable value of their services.

Friesleben contends that the court's award of $10,000 for services rendered by Manwell and Clewe is unreasonable and exorbitant, asserting that their original association with the case was solely on behalf of the minority stockholders by whom they were to be paid and that their additional employment by Friesleben confined their additional work to the trial in the superior court in aid of Friesleben's other counsel in the prosecution of its cross-complaint. These arguments could well be addressed to the trial court and no doubt were. On appeal, however, we cannot say that, in view of the whole record, the trial court's finding as to the amount reasonably earned by Manwell and Clewe for services is not justified.

Friesleben further contends that the testimony of Manwell and Clewe concerning their employment and concerning other matters hereafter discussed as to an asserted accord is all inherently improbable and incapable of belief. We think no extended discussion is necessary in disposing of this assignment, for we find nothing inherently improbable and nothing incapable of belief.

Although the complaint was in common count form and the answer consisted of general denials, and although the findings of the court did not go beyond these general issues

posed by the pleadings, nevertheless and without objection Friesleben introduced proof in defense of the cause sued upon of certain arrangements made after the services had been concluded and the obligations of Manwell and Clewe had been fully performed with nothing remaining save the ascertainment of the reasonable value of their services and the payment thereof by Friesleben. Notwithstanding the lack of affirmative pleadings, we will, under the circumstances, treat these matters as sufficiently presented and, therefore, to be decided on the merits.

Shortly before the remittitur came down, Manwell wrote to Black concerning compensation and suggested that for all legal services rendered by the four attorneys he and Clewe should receive $10,000 and Black and Rich should receive $15,000. Clewe also wrote to Black during this period, citing authorities in support of a suggestion he made that Friesleben could bring an action upon an attachment bond which Kesterson filed when he began his action against Friesleben and upon a second bond which Kesterson filed to maintain that attachment in force pending Kesterson's appeal from the judgment in that action. The idea appears to have been that fees expended by Friesleben in the litigation brought by Kesterson might be considered as damages within the terms of the attachment bonds. In the following letter Clewe suggested that a determination ought to be reached as to the proper charges for all legal services rendered in the Kesterson suit. Black answered, discussing the subject of fees rather generally. After the remittitur came down, Clewe took up the matter of fees again and asked that progress be made; and Black replied, discussing the suggested litigation on the attachment bonds, saying: "As to attorney fees, I thought that we had reached an understanding, viz that we would ask in the damage suit [the proposed suit on the attachment bonds] for total attorney fees of $25,000.00, with the understanding that you and Ray would be included under a blanket bill of Bill Rich and mine to the company for that amount and with the understanding between us that in the event we recovered $25,000.00 for attorney fees that you and Ray would receive a total of $10,000.00 *which would include the amount to which you are entitled of one-half of the present judgment,* or as it would most likely be paid prior to that time the company would be given a credit off of the $10,000 for the sum already received in the Kesterson judgment. [This refers to the recovery Friesleben had made against Kesterson over and above

the Kesterson claim for $50,000 which excess by Friesleben's settlement with Christenson belonged to Christenson as hereinbefore recited. It was the same fund or claim which Christenson had assigned to Manwell and Clewe.] In the event the company recovers a sum of less than $25,000.00, you and Ray are to receive two-fifths of any such sum, less the offset of all payments from the one-half due you from the Kesterson judgment." This appears to have been a proposal to partially pay Manwell and Clewe by giving them their own money earned by them while serving Christenson. Clewe answered, stating among other things: "The understanding with respect to attorneys' fees as set forth in your letter is entirely satisfactory to us and, I am sure, is also to Manwell." At the trial in this action Clewe testified, perhaps due to the fact that seven years had elapsed between the assignment to himself and Manwell by Christenson of Christenson's rights to the money now being offered to them in payment of their services to Friesleben, that he had entirely forgotten that the fund belonged to them. Shortly after Black wrote the above letter, he sent to Clewe a check for $4,600.80, and in the letter of transmittal Black wrote: "I am making the check in your name in accordance with your instructions so that it will facilitate your settling with Ray Manwell, but for the purpose of my records this payment is the amount due both of you, under our previous arrangement, at this time." Clewe wrote Black the next day, acknowledging receipt of the check and then, notwithstanding his apparent acceptance of Black's proposals concerning the way in which he and Manwell should be paid by Friesleben wrote: "Would it not be in order at the present time to send us the difference between $10,000.00 and the amount of the check which we have now received. If this were done then . . . our total fee will have been paid in full." We now quote from Friesleben's opening brief on appeal: "That was of course turned down because it was not in the agreement, and in the second place there was certainly nothing definite that the attorney fees would be collected from Kesterson. Thereafter the correspondence from Clewe and Manwell goes upon the assumption that the balance of the $10,000.00 was due and payable immediately, whether or not it was ever collected from Kesterson." After considerable controversy, however, Clewe finally wrote Black protesting against their having to await the outcome of the suit on the attachment bonds for their fees and saying: "I feel certain that you and Bill are not permitting compensation to

*you to depend upon the outcome of the pending action, and if you are not, neither should we nor will we.''* In this letter Clewe also asserted that the money that had been received was the money which was owed by Friesleben to Christenson and already belonged to himself and Manwell by assignment and that ''This was apparently overlooked by us throughout our previous correspondence.'' The parties at this point broke off diplomatic relations, and Manwell and Clewe, through their assignee for collection, began the present action to recover $10,000 as the reasonable value of their services to Friesleben.

As stated before, the trial court made no specific findings upon the matters just discussed. Friesleben complains of this lack of findings, and certainly the work of this court would have been easier if specific findings had been made and we had had the benefit of knowing what decisions the court made. On the other hand, no proper request for special findings thereon was made, and the findings made actually were as broad as the pleadings in the cause. Unless necessary, therefore, we are not disposed to reverse for want of findings. When findings were proposed, Friesleben's counsel filed a document entitled ''Objections to Proposed Findings of Fact. . . .'' Therein they objected to the finding of employment of Manwell and Clewe, to the finding that they performed services at the special instance and request of Friesleben and stated that their objections were based upon the following grounds: That the findings did not show Manwell's and Clewe's employment to represent the majority stockholders; that they did not show that their services were rendered to those majority stockholders; that they did not show that any employment of the attorneys was for services in addition to those to be rendered to the minority stockholders; that they did not show that in April and May of 1953 Friesleben agreed with Manwell and Clewe to the payment of $4,600.80 as their fees for services rendered and did not show that they accepted that payment as payment in full; that the findings did not show it was agreed that an additional sum would be due only if and when Friesleben received attorneys' fees from Kesterson; and that in that event the sum to be paid would be two-fifths of the amount received up to $10,000, less $4,600.80 already paid. There was no request in the document filed for findings upon issues presented by proof and counter-proof of the dealings concerning the compensation to be paid Manwell and Clewe and the man-

ner and time of its payment. At best, request is made that findings on that subject matter be made favorable to Friesleben. Unless, therefore, the trial court was as a matter of law compelled to make the findings requested and unless such findings would have constituted a defense to the action, the trial court was not required to respond.

Friesleben's counsel have not informed this court in their briefs and arguments as to the exact legal theories on which they contend that they have proved a defense to the action against the corporation. On the main issues we have already said that the court's judgment adverse to the corporation must be sustained, and we are now concerned, therefore, only with whether or not the matters last discussed constitute a defense, had the trial court found as Friesleben requested. We are convinced that they do not. In our view, the evidence concerning the negotiations about payment tends to prove an accord. Manwell and Clewe had fully performed their contract of services, and Friesleben owed them the reasonable value thereof. ''An accord is an agreement to accept, in extinction of an obligation, something different from or less than that to which the person agreeing to accept is entitled.'' (Civ. Code, § 1521.) ''Acceptance, by the creditor, of the consideration of an accord extinguishes the obligation, and is called satisfaction.'' (Civ. Code, § 1523.) On the subject of when an obligation is discharged by accord and satisfaction, we now refer to Restatement of the Law of Contracts, section 417 et seq., and herein we are assuming that by the correspondence and the conduct of the parties an accord was made out. ''The following rules are applicable to a contract to accept in the future a stated performance in satisfaction of an existing . . . duty to make compensation: (2) Such a contract does not discharge the duty, but suspends the right to enforce it as long as there has been neither a breach of the contract nor a justification for the creditor in changing his position because of its prospective nonperformance. (b) If such a contract is performed, the previously existing duty is discharged. (c) If the debtor breaks such a contract the creditor has alternative rights. He can enforce either the original duty or the subsequent contract. (d) If the creditor breaks such a contract, the debtor's original duty is not discharged. The debtor acquires a right of action for damages for the breach, and if specific enforcement of that contract is practicable, he acquires an alternative right to the specific enforcement thereof. If the contract is enforced specifically, his

original duty is discharged." (§ 417, *supra.*) There is an exception to the rule that an accord does not discharge the duty, and it is stated in section 418, as follows: "A subsequent contract may itself be accepted as immediate satisfaction and discharge of a pre-existing . . . duty to make compensation; and if so accepted the pre-existing duty is discharged and is not revived by the debtor's breach of the subsequent contract." In comment under section 418, *supra*, it is stated that it is a question of interpretation whether a subsequent agreement shall immediately discharge the earlier duty or whether it is only performance of that subsequent agreement which will have that effect. Section 419 is declared to give aid to that interpretation and it is as follows: "Where a contract is made for the satisfaction of a pre-existing . . . duty to make compensation, the interpretation is assumed in case of doubt, if the pre-existing duty is an undisputed duty . . . to make compensation . . ., that only performance of the subsequent contract shall discharge the pre-existing duty; . . ." And in the comment we find: "If a claim for an unliquidated sum is overdue it is designated as a duty to make compensation. Where the . . . claim is overdue, the creditor generally will not enter into a bargain for an immediate cancellation of his claim without obtaining satisfaction and not merely a promise of it." Applying the foregoing, we hold that the trial court would have been fully justified in determining that the accord itself was not, and was not intended to be, accepted as a discharge of the duty to pay compensation to Manwell and Clewe. Again assuming that Friesleben proved an accord and a part performance of it through transmittal of Black's check for $4,600.80, nevertheless, no discharge of the original duty to pay reasonable compensation for the attorneys' services is thus shown, for Friesleben's proof stopped at this point. It did not prove that it ever brought the suit against Kesterson and his bonding company or what result was attained if litigation was begun. In short, it did not prove accord and satisfaction and thus failed to prove a discharge of the obligation to pay compensation in a reasonable sum to Manwell and Clewe. But Friesleben argues further that, in any event, it was entitled to a credit of $4,600.80 upon the amount fixed by the trial court as the reasonable value of services rendered to it. It does not follow as a matter of law that, having made the accord and partially performed it, it is entitled to a credit upon the original obligation. For instance, under the rules we have quoted from Restatement,

if Manwell and Clewe, obligated by the accord to await the outcome of the litigation against Kesterson, filed this suit and thus breached their duties under the accord, the remedy of Friesleben would be either to assert a cause of action for damages for the breach or seek the specific enforcement of the accord in equity; and in either event, proof being made to the satisfaction of the court that the accord was based upon a mistake of fact as to the rights of Manwell and Clewe as to the only funds they received, Friesleben might be denied either damages or specific enforcement. These matters are speculative and we state them merely to show that when Friesleben stopped where it did in its reliance upon the accord, it had made out neither total nor partial defense to the original obligation reflected in the judgment from which this appeal has been taken.

The judgment appealed from is reduced by the amount of interest allowed prior to entry of judgment, and as so modified it is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied March 22, 1957, and appellant's petition for a hearing by the Supreme Court was denied April 25, 1957.