**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FANUCCHI & LIMI FARMS, a general
partnership, aka Fanucchi-Limi
Farms Partnership # 2; LARRY
FANUCCHI; RICHARD LIMI,
    *Plaintiffs-Appellants,*

     v.

UNITED AGRI PRODUCTS, a
corporation,
    *Defendant-Appellee.*

No. 02-17525

D.C. No.
CV-00-06349-REC

FANUCCHI & LIMI FARMS, a general
partnership, aka Fanucchi-Limi
Farms Partnership # 2; LARRY
FANUCCHI; RICHARD LIMI,
    *Plaintiffs-Appellants,*

     v.

UNITED AGRI PRODUCTS, a
corporation,
    *Defendant-Appellee.*

No. 03-15913

D.C. No.
CV-00-06349-REC/
DLB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Robert E. Coyle, Senior Judge, Presiding

Argued and Submitted
September 15, 2004—San Francisco, California

Filed July 14, 2005

Before: Robert R. Beezer, William A. Fletcher, and
Raymond C. Fisher, Circuit Judges.

8181

Opinion by Judge William A. Fletcher;
Concurrence by Judge Beezer

**COUNSEL**

Thomas J. Anton and Jeffrey Wise, Thomas Anton & Associates, Bakersfield, California, for the plaintiffs-appellants.

Elizabeth R. Jones, The Beatty Law Firm, Denver, Colorado, for the defendant-appellee.

**OPINION**

W. FLETCHER, Circuit Judge:

Fanucchi & Limi Farms, Larry Fanucchi, and Richard Limi (collectively "Fanucchi") sued United Agri Products Financial Services, Inc. ("United") for breach of contract and promissory fraud. The district court granted summary judgment to United. Fanucchi appeals from the grant of summary judgment, and from an associated grant of attorneys' fees. We conclude that the novation theory providing one basis for Fanucchi's breach of contract claim should have survived summary judgment. Accordingly, we reverse and remand to

allow the breach of contract claim to go forward on a novation theory. We otherwise affirm the summary judgment. Because we reverse part of the summary judgment, we vacate the order granting attorneys' fees.

## I.   Background

Larry Fanucchi, Richard Limi, and Linda Limi were general partners in Fanucchi & Limi Farms, in Kern County, California. Fanucchi financed its farming operations by borrowing against its future crop proceeds. In December 1994, United lent money to Fanucchi to finance its operating costs for 1995 ("the 1994 Loan"). The 1994 Loan was memorialized in several documents, including an Agricultural Loan Agreement, a Promissory Note, an Agricultural Security Agreement, separate Commercial Guarantees personally executed by Larry Fanucchi, Richard Limi, and Linda Limi, and a Notice of Final Agreement.

These documents set out the terms of the loan in considerable detail. The Agricultural Loan Agreement outlines the disbursement schedule, repayment terms, and circumstances under which the loan may be renewed in future years. The Agricultural Security Agreement establishes United's security interest in Fanucchi's crops. The Commercial Guarantees are individual loan guarantees by Larry Fanucchi, Richard Limi, and Linda Limi in the event United's security interest in the crops fails to cover the loan. The Notice of Final Agreement provides that the 1994 Loan incorporates all of the above documents.

The 1994 Loan documents contain language describing how the parties may modify the agreement. Both the Agricultural Loan Agreement and Agricultural Security Agreement have an integration clause that reads:

> **Amendments.** This Agreement, together with any Related Documents, constitutes the entire under-

standing and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

The three Commercial Guarantees also contain integration clauses requiring modifications to be in writing. Finally, the Notice of Final Agreement provides that (1) "the written loan agreement represents the final agreement between the parties," (2) "there are no unwritten oral agreements between the parties," and (3) "the written loan agreement may not be contradicted by evidence of any prior, contemporaneous, or subsequent oral agreements or understandings of the parties."

After Fanucchi and United entered into the 1994 Loan agreement, United increased the amount of the note from $700,000 to $800,000 on January 30, 1995; to $900,000 on March 1, 1995; and to $1,475,000 on September 18, 1995. All increases were made in writing and provided that "[t]he terms and conditions of [the original Promissory Note] will remain in full force and effect for this increase."

Fanucchi's 1995 crops failed. As a result, Fanucchi was unable to repay the 1994 Loan, and owed more than a million dollars to United. Fanucchi consulted with a United representative, Wayne Keese, and with bankruptcy counsel. According to the depositions of Larry Fanucchi ("Larry") and Richard Limi ("Richard"), Keese persuaded Fanucchi not to file for bankruptcy, but rather to continue farming. According to Larry and Richard's depositions, Keese orally promised to subordinate United's debt to new crop financing loans from other lenders for up to five years. During this period, United's 1994 Loan would be repaid from the crop proceeds available after new crop loans were paid off. These proceeds were to be split on a 60/40 basis, with 60 percent going to United and 40 percent going to Fanucchi's other creditors. According to

Larry's deposition, Keese said that if Fanucchi had paid its debt on the 1994 Loan down to $300,000 or $400,000 at the end of the five-year period, United would forgive that amount.

Keese testified in his deposition that "[w]e discussed pretty openly possibilities, options, of which bankruptcy was one." He stated, "[M]y approach always has been to — if you can work out an arrangement where they can continue to pay their debt in a reasonable period of time, I'm open and willing to listen to it." Keese confirmed that there was an oral agreement that after the new crop loans were paid off the remaining money would be split 60/40, but his recollection was that this was done only on a year-to-year basis. Keese stated that he did not recall discussing a five-year term during which Fanucchi could try to pay down its debt to United. Nor did he recall promising that United would forgive the debt at the end a five-year period should Fanucchi succeed in paying it down to a certain level: "I don't remember having any discussion of that . . . that nature" (ellipsis in original).

The agreement operated as described by Larry and Richard for the crop years 1996 and 1997. New secured lenders were found for those years; those lenders were paid from the crop proceeds; and the remaining proceeds were divided 60/40 between United and Fanucchi's other creditors. There is ample undisputed evidence in the record to show this. For example, a January 5, 1997 letter from a United representative, Bruce Carter, to Southern California Cotton Financing ("Southern California Cotton") details United's agreement to subordinate its debt to enable Fanucchi to obtain other sources of crop financing for that year. The secured lenders for that year include Southern California Cotton, as well as the parents of Larry and Richard. The letter provides in part:

> [A]ccording to the attached "Acknowledgment and Agreement," on behalf of United Agri Products Financial Services, I give the authority to Southern

California Financing to pay the above mentioned sums to first, Southern California Cotton Financing, secondly to Mr. & Mrs. Fanucchi and thirdly to Mr. & Mrs. Limi, prior to funds coming to United Agri Products Financial Services, Inc. All funds in excess of the Southern California Cotton Financing, Fanucchi and Limi funds should come to United Agri Products Financial Services, Inc.

A May 12, 1997 letter from Carter to Daniel Rudnick, Fanucchi's attorney, similarly describes United's agreement:

This letter is to advise you that United Agri Products has agreed to split the profits from the 1997 Fanucchi-Limi Farms Partnership #2 farming operations on a basis of 60% for United Agri Products and 40% for Fanucchi-Limi Farms. Profits should be defined as those monies left after the repayment of all 1997 operating loans, including interest, to Southern California Cotton Financing, and to both sets of parents[.]

Keese's employment at United terminated in early 1998. His last day on the payroll was March 31. Beginning in the spring of 1998, United was no longer willing to perform in accordance with the agreement described by Larry and Richard. Instead of subordinating to all of the lenders for the 1998 crop, United was willing to subordinate only to Southern California Cotton. On April 17, 1998, Denise Fitzgerald wrote on behalf of United to Southern California Cotton, confirming that United had assigned its interest in the proceeds of the 1998 crop to Southern California Cotton up to the amount of its loan, and indicating that all the remaining proceeds from the 1998 crop were to be paid to United. Unlike in 1996 and 1997, United refused to subordinate to the parents of Larry and Richard. Jerry Simmons, who had been hired by United as the new credit manager in February or March 1998, testi-

fied at his deposition that it was his decision not to subordinate to the parents: "I don't subordinate to family members."

In August 2000, Fanucchi sued United in California Superior Court for breach of contract and promissory fraud. The gravamen of Fanucchi's breach of contract claim is that by promising substantially to change the terms of the 1994 Loan agreement, United induced Fanucchi not to declare bankruptcy after the failure of the 1995 crops. In return for Fanucchi's not declaring bankruptcy, United agreed in 1995 to subordinate its lien to crop loans by new lenders for the next five years, to take only 60 percent of the crop proceeds remaining after the new crop lenders were paid off each year, and to forgive between $300,000 and $400,000 of the outstanding loan at the end of five years if Fanucchi were able to pay it down to that level. United breached this new agreement in 1998 by refusing to subordinate its lien to the two sets of parents, who had made crop loans for that year, and by taking all of that year's excess crop proceeds for its own account. United's actions prevented Fanucchi from obtaining financing for future crop years, effectively forcing it out of business.

United removed to federal district court based on diversity of citizenship. The district court granted summary judgment and attorneys' fees to United. Fanucchi has timely appealed. We review the district court's grant of summary judgment de novo. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). Viewing the evidence in the light most favorable to Fanucchi, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied California's substantive law. *Id.*

## II.   Breach of Contract

Fanucchi makes two breach of contract arguments. First, it argues that the subsequent oral agreement between Fanucchi and United modified the original 1994 Loan. Second, it argues that the subsequent oral agreement novated the 1994

Loan. We affirm the district court's grant of summary judgment to United on the modification argument. However, we reverse on the novation argument.

## A.   Modification

Fanucchi first argues that the 1994 Loan agreement was modified through subsequent oral agreements pursuant to California Civil Code §§ 1698(b) and (c), which provide:

> (b) A contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties.

> (c)   Unless the contract otherwise expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration. The statute of frauds (Section 1624) is required to be satisfied if the contract as modified is within its provisions.

The district court rejected this argument. We agree with the district court.

**[1]** Section 1698(b) allows modification of a written contract by an oral agreement to the extent the oral agreement is executed. "Executed" in § 1698(b) has the normal meaning of that term in contract law. That is, the agreement must have been fully performed. *Lockheed Missiles & Space Co. v. Gilmore Indus.*, 135 Cal. App. 3d 556, 559 (Ct. App. 1982) (relying on Black's Law Dictionary to define "executed" as "completed; carried into full effect" (internal quotations omitted)); *see also* Cal. Civ. Code § 1661 ("An executed contract is one, the object of which is fully performed."). Fanucchi's own argument defeats its claim under § 1698(b), for it argues that United breached its obligation under the oral agreement because it failed to perform the *un*executed part of the agreement.

**[2]** Section 1698(c) allows oral modification of a written contract only if the written contract does not provide otherwise. *See also Marani v. Jackson*, 183 Cal. App. 3d 695, 704 (Ct. App. 1986) (noting that oral modification of a written contract is allowed only if "the written contract does not contain an express provision requiring that modification be in writing"). The 1994 Loan provides that "the written loan agreement may not be contradicted by evidence of any prior, contemporaneous, or subsequent oral agreements or understandings of the parties." Fanucchi therefore cannot rely on § 1698(c) in support of its oral modification claim.

### B.   Novation

Fanucchi next contends that the 1994 Loan agreement was novated. Taking the evidence in the light most favorable to Fanucchi, we agree. That is, if Fanucchi's evidence is believed, the 1994 Loan agreement was novated, and the subsequent oral agreement governs the relationship between Fanucchi and United.

California Civil Code § 1698(d) provides:

> Nothing in this section precludes in an appropriate case the application of rules of law concerning estoppel, oral novation and substitution of a new agreement, rescission of a written contract by an oral agreement, waiver of a provision of a written contract, or oral independent collateral contracts.

United does not argue that novation is unavailable because the subsequent agreement was oral. Rather, it argues Fanucchi has failed properly to plead novation, and that, even taking Fanucchi's evidence in its most favorable light, the subsequent oral agreement does not fulfill the substantive requirements of novation under California law. We disagree.

**[3]** Novation is "the substitute of a new obligation for an existing one." *Wells Fargo Bank v. Bank of America*, 32 Cal.

App. 4th 424, 431 (Ct. App. 1995) (quoting Cal. Civ. Code § 1530). Novation may be accomplished either by the substitution of a new debtor or a new creditor, California Civil Code § 1531(2)-(3), or "[b]y the substitution of a new obligation between the same parties, with intent to extinguish the old obligation[.]" *Id.* § 1531(1). Whereas a modification of a term or a provision of a contract alters only certain portions of the contract, novation wholly extinguishes the earlier contract. *Davies Mach. Co. v. Pine Mountain Club, Inc.*, 39 Cal. App. 3d 18, 25 (Ct. App. 1974). " 'The intention of the parties to extinguish the prior obligation and to substitute a new agreement in its place must clearly appear.' " *Hunt v. Smyth*, 25 Cal. App. 3d 807, 818 (Ct. App. 1972) (quoting *Goodman v. Citizens Life & Cas. Ins. Co.*, 253 Cal. App. 2d 807, 816 (Ct. App. 1967)). The existence of a new oral agreement replacing a prior written agreement must be shown with "clear and convincing" evidence. *Columbia Cas. Co. v. Lewis*, 14 Cal. App. 2d 64, 72 (Ct. App. 1936).

**[4]** In deciding whether an agreement was meant to extinguish the old obligation and to substitute a new one, California courts seek to determine the parties' intent. *See, e.g.*, *Alexander v. Angel*, 37 Cal. 2d 856, 860 (1951) ("The question whether a novation has taken place is always one of intention [.]" (internal quotation marks and citation omitted)); *N. Counties Bank v. Earl Himovitz & Sons Livestock Co.*, 216 Cal. App. 2d 849, 859 (Ct. App. 1963) ("Existence of a novation turns on the parties' intention to discharge the old contract and substitute a new one."); *Transp. Clearings-Bay Area v. Simmonds*, 226 Cal. App. 2d 405, 430 (Ct. App. 1964) ("The question whether a novation has taken place is always one of intention, with the controlling factor being the intent of the obligee to effect a release of the original obligor on his obligation under the original agreement.") (internal quotation marks and citation omitted).

**[5]** Determining the parties' intent is a highly fact-specific inquiry. *See Hunt*, 25 Cal. App. 3d at 818. Such inquiries are

not generally suitable for disposition on summary judgment. *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1060 (9th Cir. 2000) (" '[F]act-specific issues . . . should ordinarily be left to the trier of fact [though] summary judgment may be granted in appropriate cases.' ") (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500 (9th Cir. 1992))). Courts examining a novation claim first look to the agreements themselves, and, specifically, the substance of the change or changes between the old and new agreements. *See Angel*, 37 Cal. 2d at 861-62. Courts may also take into consideration the conduct of the parties, particularly where, as here, the subsequent agreement is oral. *See Porter Pin Co. v. Sakin*, 112 Cal. App. 2d 760, 762 (Ct. App. 1952). Indeed, "it is not necessary to meet and state either in writing or orally that the original contract was rescinded. 'If the intent to abandon can be ascertained from the acts and conduct of the parties the same result will be attained. Abandonment may be implied from surrounding facts and circumstances.' " *Hunt*, 25 Cal. App. 3d at 818 (quoting *Tucker v. Schumacher*, 90 Cal. App. 2d 71, 75 (1949)).

[6] United makes two arguments against novation. First, it argues that Fanucchi was required to plead novation specifically in its complaint. United fails to recognize that, with few exceptions, federal courts employ notice pleading under Federal Rule of Civil Procedure 8(a). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The district court rejected United's argument, pointing out that it improperly relied on California state court pleading cases. Unlike the federal courts, California courts employ code pleading, which requires more factual detail than notice pleading. *See, e.g.*, *Angel*, 37 Cal. 2d at 860 (discussing California's pleading rules, which require that novation must be pleaded "expressly" or by unequivocal implication). The district court correctly held that Fanucchi has fully satisfied the requirement of Rule 8(a)(2) that the complaint "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]"

Second, assuming the truth of Fanucchi's evidence, United argues that there has been no novation. Specifically, United argues that the changes between the original 1994 Loan agreement and the later oral agreement were insufficient to evidence an intent to extinguish the 1994 Loan agreement and to replace it with a new agreement. The strongest case in support of United's argument is *Davies Machinery Co. v. Pine Mountain Club, Inc.*, 39 Cal. App. 3d 18 (Ct. App. 1974). In *Davies Machinery*, the Smiths entered into a security agreement under which they agreed to purchase heavy earthmoving equipment from Davies Machinery ("Davies") for slightly over a million dollars. The contract provided that the Smiths would pay $43,574 per month for 24 months. The contract further provided that payments not made when due would accrue interest at a rate of 12 percent. About a year later, the Smiths had fallen behind in their payments and owed over $100,000 under the contract. *Id.* at 21.

Davies agreed with the Smiths that they could keep the equipment in order to generate income from their contracting business, and that they would pay for it at a specified rate based on the actual hours the equipment was used in the business. Nothing was said about terminating the original purchase contract. While the Smiths were performing work for the Pine Mountain Club, they fell behind in the newly arranged payment schedule. Davies repossessed the equipment and sold it. Davies then sought to impose a mechanic's lien on the Pine Mountain Club. Under California law, Davies was entitled to a lien against Pine Mountain Club if the equipment had been rented to the Smiths, but not if it had been sold to them. No one disputed that the original agreement constituted a sale of the equipment. However, Davies contended that the change in the payment scheme after the Smiths fell behind in their payments constituted a novation of the original contract, by virtue of which the Smiths became renters rather than owners of the equipment.

The Smiths' accountant testified at trial that the purpose of the new arrangement was "to arrange lower monthly pay-

ments on the purchase contract so that the equipment could ultimately be paid off." *Id.* at 25. Davies's manager testified that neither Davies nor the Smiths ever "released their equity in the equipment." *Id.* The Court of Appeal noted that the parties had explicitly agreed only that the manner and timing of the payments should be changed. On these facts, the court held that the original contract had not been novated, and that a mechanic's lien was improper.

**[7]** If Fanucchi's evidence is believed, the new agreement in this case did more than simply alter the timing and amount of the payments to United. For example, unlike the agreement in *Davies Machinery*, United agreed to "release its equity" (to use the phrase employed in *Davies Machinery*) in Fanucchi's crops in order to permit Fanucchi to obtain new crop financing after 1995. Further, under the new agreement, United would forgive between $300,000 and $400,000 at the end of five years. By contrast, Davies never agreed to forgive any part of the Smiths' obligation to pay for the equipment.

This case more closely resembles *Alexander v. Angel*, 37 Cal. 2d 856 (1951), and *San Gabriel Valley Ready-Mixt v. Casillas*, 142 Cal. App. 2d 137 (1956), where the California Supreme Court and the Court of Appeal found novation. In *Angel*, the Alexanders sold a business to Angel and took back two promissory notes secured by a chattel mortgage. Each note was for $2,150. One note was due in one year, the other in two years. Neither note bore interest. Prior to the maturity of either note, Angel sold the business to the Hawses. Upon this sale, the Alexanders and the Hawses agreed that the Alexanders would not enforce the original notes, but would, instead, take back a new note from the Hawses. The new agreement was different from the old agreement in three respects: (1) Unlike the original notes, which were to be paid off on a lump-sum basis at the end of one and two years, the new notes would be paid at a rate of $150 per month until the entire $4,300 was paid off. (2) Unlike the original notes, the new notes bore interest. (3) Unlike the original notes, the new

notes contained an acceleration clause in the event of nonpayment of the monthly obligation.

When the Hawses fell behind in their payments, the Alexanders sued Angel to enforce the obligation under the original notes. Angel defended on the ground that the agreement between the Alexanders and the Hawses was a novation, and that the obligation under the original notes was extinguished. The California Supreme Court held that the changed agreement between the Alexanders and the Hawses was a novation, extinguishing the old obligation "by the substitution of a new debtor in place of the old one" under Cal. Civil Code § 1531(b). Even though the Court was addressing a novation in which there had been a change of parties to the agreement under § 1531(b), the Court's analysis was the same as that required for novation between the same parties under § 1531(a). That is, the Court's inquiry was whether the changes between the old and new obligations were sufficiently substantial to show an "extinguishment" of the old obligation and a replacement by the new one. 37 Cal. 2d at 861. Characterizing the changes between the old and new obligations as "drastic," the Court held that there had been a novation. *Id.*

[8] If Fanucchi's evidence is believed, the changes between the 1994 Loan agreement and the new agreement were more "drastic" than the changes at issue in *Angel*. In *Angel*, the only changes between the old and new notes was the difference in payment schedule, the added obligation to pay interest, and the addition of an acceleration clause. The old and the new notes were both secured by the same underlying chattels, and the amount of principal under the two notes was the same. In the case now before us, not only was the payment schedule different, United also agreed to give up part of its security interest by subordinating its lien to new crop lenders. Further, United agreed that the principal amount owed by Fanucchi would be reduced by between $300,000 and $400,000 at the end of five years if Fanucchi sufficiently paid down the debt.

In *San Gabriel Valley Ready-Mixt*, the San Gabriel Valley Ready-Mixt Company ("Ready-Mixt") agreed with Casillas to supply 6,140 cubic yards of concrete at $9.45 per yard. For a short time, Ready-Mixt delivered concrete at that price. After a few months, however, Ready-Mixt informed Casillas that, due to a cement shortage, it would not be able to supply the rest of the promised concrete at the promised price. Casillas said, "To hell with it; I will get it from someone else." *Id.* at 139. After about two weeks of purchasing concrete elsewhere, Casillas told Ready-Mixt that he would buy additional concrete from Ready-Mixt if they would sell it at $11.52 per cubic yard. Ready-Mixt then delivered 800 cubic yards of concrete.

After the concrete had been delivered, Casillas refused to pay the higher price, insisting on the old contract price. The Court of Appeal held that there had been a novation. A provision to pay the increased price alone "would have been insufficient to effect a novation." *Id.* at 140. But "[i]f there was a mutual understanding that defendant could and would buy his concrete elsewhere and that neither party would demand further performance of the contract by the other, this would have effected an abandonment of the contract. Entering into a new oral contract under these circumstances would have effected an abandonment of the contract." *Id.* at 141.

**[9]** The changes between the first and second contracts in *San Gabriel Valley Ready-Mixt* are no more substantial than the changes between the 1994 Loan agreement and the later oral agreement in this case. In *San Gabriel Valley Ready-Mixt*, external conditions made it impossible for Ready-Mixt to fulfill the terms of the original contract without losing money; after a short hiatus, Casillas agreed to purchase less concrete at a higher price. In this case, external conditions made it impossible for Fanucchi to pay off the amount of the loan from the 1995 proceeds. If Fanucchi's evidence is believed, United then agreed to be paid over a longer period

of time with less security, and, if certain conditions were fulfilled, to accept a substantially reduced amount.

**[10]** Another important factor in determining whether there has been novation, besides the nature of the changes between the old and the new contracts, is the conduct of the parties. In both *Angel* and *San Gabriel Valley Ready-Mixt*, the courts concluded that the parties' conduct indicated that they considered the new contracts to have extinguished and replaced the old contracts. In this case, the parties' conduct during crop years 1996 and 1997 supports Fanucchi's contention that the 1994 Loan was novated. It is undisputed that during those two years United subordinated its lien to the new crop lenders, and took only 60 percent of the proceeds remaining after the secured crop lenders had been paid off.

**[11]** In sum, we conclude that if Fanucchi's evidence is believed, the 1994 Loan agreement was novated. Summary judgment in favor of United was therefore improper on the issue of novation.

### III.   Judge Beezer's Concurrence

Judge Beezer has written a separate concurrence to express his "understanding of novation under California law." Concurrence at 8206. To the extent Judge Beezer's concurrence is at variance from our majority opinion, it is, of course, a dissent. We disagree with Judge Beezer in three respects.

### A.   *Alexander v. Angel*

First, Judge Beezer contends that we mistakenly rely on *Alexander v. Angel* in concluding that the changes between the 1994 Loan agreement and the later oral agreement were substantial enough to constitute novation. Judge Beezer contends that *Angel* is inapt because, unlike in this case, there was a substitution of parties under California Civil Code § 1351(b) rather than a substitution of agreements between

the same parties under § 1351(a). Judge Beezer is correct that *Angel* is a substitution-of-parties case. But he is incorrect in putting the case to one side. As Judge Beezer himself recognizes in a paragraph in which he discusses *Angel*, the fundamental issue is whether " 'the parties intended to *extinguish* rather than merely modify the original agreement.' " Concurrence at 8210 (quoting *Wells Fargo Bank, N.A. v. Bank of Am. NT & SA*, 38 Cal. Rptr. 2d 521, 525 (Ct. App. 1995) (emphasis added)). The question the Court answered in *Angel* was whether the changes between the two contracts were sufficiently "drastic" such that there was an "extinguishment" of the earlier contract. *See* 37 Cal. 2d at 861. That is exactly the question at issue in this case.

## B.   Distinction Between Novation and Accord

Second, Judge Beezer contends that we have conflated novation and accord. Under California law, an accord is defined as "an agreement to accept, in extinction of an obligation, something different from or less than that to which the person agreeing to accept is entitled." Cal. Civil Code § 1521. Once "the something different" has been delivered, there has been satisfaction of the accord. *See* Cal. Civ. Code § 1523; *Moving Pictures Mach. Operators Union Local 162 v. Glasgow Theaters, Inc.*, 6 Cal. App. 3d 395, 402-03 (1970). Until performance by the obligor, the accord is executory, and the old obligation has not been extinguished. *Gardiner v. Gaither,* 162 Cal. App. 2d 607, 620 (1958). That is, when two parties enter into an accord, "the [original] obligation is not extinguished until the accord is fully executed, even though the parties to the accord are bound to execute it." *Id.* at 621 (citation and internal quotation marks omitted). A novation, on the other hand, is a substituted contract that extinguishes the previous agreement as soon as the parties enter into the new agreement, even if the new agreement is executory. *Davisson v. Faucher*, 105 Cal. App. 2d 445, 447 (1951); *Eckart v. Brown*, 34 Cal. App. 2d 182, 187 (1939); *Beckwith v. Sheldon*, 165 Cal. 319, 323-24 (1913). Put succinctly,

[A] novation extinguishes one obligation by accepting for it another, that is, the creditor agrees to accept the second promise for his existing claim. But this is not true of an accord. Here it is not the new promise that is accepted in lieu of the existing claim, but the performance of that new promise.

*Gardiner*, 162 Cal. App. 2d at 620. In distinguishing between an executory accord and a novation, the determinative factor is the intent of the parties. *See, e.g.*, *id.* at 619-20; *Rankin v. Miller*, 179 Cal. App. 2d 133, 138-39 (1960).

Judge Beezer reads California law to contain an automatic across-the-board presumption in favor of accord and against novation. This is an overreading of the California case law. Judge Beezer relies heavily on *Gardiner* to support his argument for an across-the-board presumption. Judge Beezer quotes the first two sentences of a long paragraph from that opinion, the second of which states that there is a presumption against the conclusion that the parties intended that an executory contract would replace the old obligation. Concurrence at 8212-13. But a more extensive quotation makes clear that the presumption comes from the overall circumstances of the case. The Court of Appeal wrote:

In the instant case there is no evidence that respondent, on behalf of his clients, agreed to accept Gran-Wood's promise to complete three of the five structures as satisfaction of the pre-existing debts. *Certainly, the presumption is against any such conclusion.* The most reasonable and sensible interpretation of the correspondence is that the creditors were willing to accept performance of the agreement to finish three of the five houses in satisfaction of their existing claims, but extinguishment of those claims was conditional upon performance of the second promise. The correspondence in question between Gardiner and Selinger was a practical attempt at a

> practical solution by which creditors would get back some or all of their money, and Gran-Wood would be relieved of personal liability by salvaging the three buildings, which Gran-Wood obviously thought could be profitably done. But Gran-Wood found it to be unprofitable, and did not perform. Obviously, the whole agreement was prospective. What respondent's assignors wanted was performance of the second agreement. This they did not get. Thus, the original obligation was not extinguished and may be enforced.

162 Cal. App. 2d 607, 621 (emphasis added).

The only other California case in which any kind of a presumption against novation is mentioned is *Brown v. Friesleben Real Estate Co.*, 148 Cal. App. 2d 720, 730 (1957), also cited by Judge Beezer. Concurrence at 8213. The court in *Brown* quoted § 419 of the Restatement (First) of Contracts, which provides that "if the pre-existing duty is an undisputed duty . . . to make compensation," "the interpretation *is assumed in case of doubt*," that only actual performance or execution of the duty prescribed in a new contract will discharge the pre-existing duty. (Emphasis added.) Comment a to that section, also quoted by the *Brown* court, stated that in such a case, "the creditor *generally* will not enter into a bargain for an immediate cancellation of his claim without obtaining satisfaction and not merely a promise of it." *See* 148 Cal.App.2d at 730 (emphasis added). We have been unable to discover in the California cases any other reference to any kind of presumption against novation.

*Gardiner*, *Brown*, and the Restatement infer a presumption against novation from the particular circumstances of the facts or example before them. They do not state a general principle that in all cases where the choice is between accord and novation, accord is to be presumed. Rather, any presumption is inferred from the circumstances of the parties. Under *Gardi-*

*ner*, *Brown* and the Restatement, the question is whether Fanucchi and United were likely to have agreed that the executory contract described by Fanucchi's evidence would extinguish and replace the old contract. This question is not an across-the-board presumption, to be applied in all cases without regard to their factual context. Rather, it is a tool to help the court ascertain the intent of Fanucchi and United in the particular circumstances in which they found themselves after the failure of Fanucchi's 1995 crops.

If Fanucchi's evidence is believed, Fanucchi was seriously considering declaring bankruptcy after the crop failure. At United's urging, Fanucchi agreed not to declare bankruptcy and, instead, to continue farming. In return, United agreed to subordinate its secured debt to new crop lenders for five years, to accept only 60 percent of the proceeds left over after the new crop lenders were paid, and to forgive between $300,000 and $400,000 if it had been paid down to that amount at the end of five years. According to Fanucchi's evidence, the new agreement imposed new obligations on both parties that were binding as soon as the parties entered into it. According to Fanucchi's evidence, there was nothing in the new agreement that allowed United simply to abandon the new agreement at its pleasure, and to enforce the old agreement instead. *Gardiner*, *Brown*, and the Restatement instruct the district court as part of its factfinding process on remand to consider the likelihood that Fanucchi and United, in the circumstances in which they found themselves, would have intended to enter into the novated contract described in Fanucchi's evidence.

## C.   *Williams v. Reed*

Finally, Judge Beezer relies on *Williams v. Reed*, 113 Cal. App. 2d 195 (1952), apparently for the proposition that an executory agreement cannot be a novated contract. He writes that "a central aspect of Fanucchi's novation claim rests on a

theory of novation rejected by *Reed*." Concurrence at 8215. Judge Beezer misreads *Reed*.

Defendant Reed failed to pay promissory notes of $30,000 and $10,000 when they came due. Reed then entered into an agreement with Williams, under which Williams agreed to accept $35,000 and five percent interest as full payment. The language of the settlement specifically made the settlement agreement contingent upon Reed's fulfillment of his obligation: " '*Upon receipt of said payment in full*, W.E. Williams will execute any and all documents required to evidence full satisfaction of said obligation.' " *Id.* at 198 (emphasis added). The trial court held that the settlement agreement was a novation, but the Court of Appeal reversed. Under the explicit terms of the settlement agreement, the old obligation was not extinguished unless and until Reed fulfilled the executory contract to pay off the $35,000 note, which meant that the new agreement did not of itself extinguish the old obligation. Rather, the old obligation was extinguished only if and when the new obligation to pay $35,000 was fulfilled. In other words, according to its explicit terms, the new agreement was an accord rather than a novation.

Judge Beezer somehow reads *Reed* to contradict the novation theory of Fanucchi. But *Reed* is entirely consistent with Fanucchi's theory. *Reed* only tells us what we already know from black-letter California law distinguishing accord and novation: (1) If the obligation contained in the old agreement is extinguished only upon execution of the promise contained in the new agreement, the new agreement is an accord. (2) However, if the new executory agreement extinguishes the old agreement as soon as the new agreement is entered into, the new agreement is a novation. That is the standard definition of novation, contained in *Reed* and in all the other California cases.

If Fanucchi's evidence is believed, United agreed that the new executory agreement would extinguish the old agreement

when the new agreement was entered into. The fact that the new agreement was executory is not fatal to Fanucchi's theory of novation. As the Court of Appeal wrote in *Davisson v. Faucher*, 105 Cal. App. 2d 445, 447 (1951):

> [*T*]*he written contract was a complete novation* of all obligations of the parties, one to the other, which existed prior to the execution of the written contract and in particular the obligations arising out of the oral contract. *The fact that the written contract was executory is of no moment*.

(Emphasis added.)

## IV.   Promissory Fraud

**[12]** Even assuming that the 1994 Loan agreement was extinguished by the novated contract, the district court properly dismissed Fanucchi's promissory fraud claim. "Under California law, the indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (internal quotation and citation omitted). Fanucchi asserts in its complaint that United had a "secret intention" not to perform on the contract. It does not, however, present any evidence supporting its claim that United intended to defraud. Affirmative evidence is necessary to avoid summary judgment because mere nonperformance is not enough to show intent to defraud. *Tenzer v. Superscope, Inc.*, 39 Cal.3d 18, 30 (Cal. 1985) ("[S]omething more than nonperformance is required to prove the defendant's intent not to perform his promise." (quoting *People v. Ashley*, 42 Cal.2d 246, 263 (1954)) (internal citations omitted)).

## V.   Attorneys' Fees

**[13]** The district court awarded attorneys' fees to United based on a provision in the Agricultural Loan Agreement providing:

> **Costs and Expenses.** Borrower agrees to pay upon demand all of Lender's out-of-pocket expenses, including without limitation attorneys' fees, incurred in connection with the preparation, execution, enforcement and collection of this Agreement or in connection with the Loans made pursuant to this Agreement.

California Civil Code § 1717(a), deems any contract that allows attorneys' fees to a prevailing party to one party to apply equally to the other party. Because we reverse summary judgment on Fanucchi's novation claim, we vacate the district court's award of attorneys' fees to United. Once the novation claim has been resolved, the district court will be in a position to revisit the question of attorneys' fees.

## Conclusion

We reverse the district court's grant of summary judgment on Fanucchi's novation claim. We otherwise affirm the district court's grant of summary judgment. We vacate the court's award of attorneys' fees. We remand for further proceedings consistent with this opinion. Each party shall bear its own costs.

AFFIRMED in part, REVERSED in part, VACATED in part, and REMANDED.

---

BEEZER, Circuit Judge, concurring in judgment:

I concur in the result reached by the court. I write separately to express my understanding of novation under California law, and how that law applies in this case. In my view, California law instructs that the rejection of plaintiffs' ("Fanucchi") novation theory was not proper on summary

judgment, but that Fanucchi faces a substantial burden at trial to demonstrate that such a novation actually occurred.

# I

As the opinion of the court recounts, Fanucchi received a loan from United in 1994 for crop financing. Language in the loan documents prohibited oral amendments to the agreement. The "Notice of Final Agreement" also specifically provided that the contract "may not be contradicted by evidence of any prior, contemporaneous, or subsequent oral agreements or understandings of the parties." Fanucchi now attempts to do just that. To get around these agreed-upon provisions, Fanucchi argues that a novation occurred, completely extinguishing the old contract in favor of a new agreement between the same parties. Fanucchi relies on California Civil Code § 1698(d), which enables courts to give effect to a true novation despite its inconsistency with the prior agreement.

Although the word "novation" does not appear in Fanucchi's complaint, the theory is purportedly discoverable in paragraph 5 of this document. In its entirety, that paragraph reads:

> In 1995, Defendant agreed to finance the Plaintiffs' farming operations for the 1996 crop year and five (5) years thereafter. During these discussions the parties agreed that for a period of five (5) years the Defendant would finance the Plaintiffs' [sic] and give them the opportunity to rehabilitate their farming operations by not pursuing collection efforts. The Defendant conditioned its offer upon the condition that the Plaintiffs first had to obtain alternative financing from a source other than the Defendant. At the conclusion of each subsequent crop year, after the sale proceeds for the new crop was paid and the new financier was paid, the balance of the sales proceeds from the crops were to be distributed on a "60/

40" basis. Sixty percent (60%) was to be paid to the Defendant and forty percent (40%) was to be paid to the creditors of the Plaintiffs. In early 1997, one or more of the Plaintiffs had a conversation with [a representative of Defendant]. During that conversation, the following oral agreement was reached: (a) defendant would provide no further crop financing to plaintiffs; (b) defendant would subordinate its security interest in future crop proceeds to any other lenders who might provide crop financing for future years; (c) defendant would continue to be paid sixty (60%) of the net proceeds from each future crop to apply towards its receivable from the Plaintiffs; and (d) if Plaintiffs were able to pay down one half (1/2) of the principal amount owing on the debt with Defendant within five (5) years, Defendant would forgive the balance of the principal and accrued interest.

From the complaint, it is not immediately apparent what exactly triggered a novation. Was it the 1995 "discussions," or the 1997 "conversation"? Evidence in the record further muddles this picture, and Fanucchi's briefing does little to clear it up.[1] The most logical candidate for a novation is the purported agreement in 1997. Of course, because Fanucchi is alleging an oral novation, there is no document memorializing the terms of the alleged deal. Lack of a written contract, however, does not allow us to speculate about what that oral agreement entailed. Fanucchi's complaint spells out its version of the agreement's terms. Our task is to determine whether, viewing the evidence in the light most favorable to Fanucchi, the record supports those allegations in a manner sufficient to demonstrate a novation.

---

[1]Fanucchi asserts that the novation occurred when Fanucchi first agreed to forego bankruptcy in exchange for modifying its repayment obligations, presumably in 1995. But Fanucchi's briefing and arguments rely heavily on the facts of the alleged 1997 agreement to assert that the modifications were comprehensive enough to demonstrate a novation.

## II

The opinion of the court properly states the relevant requirements for a novation under California law: the substitution of a new obligation for an existing one, with the intent to extinguish the prior agreement. Cal. Civil Code §§ 1530, 1531. Evidence supporting a novation must be "clear and convincing." *See supra* at 8193 (citing *Columbia Cas. Co. v. Lewis,* 57 P. 2d 1010, 1013 (Cal. Dist. Ct. App. 1936)).

The strong emphasis on intent of the parties in California novation claims convinces me that summary judgment is not warranted here. *See, e.g.*, *Williams v. Reed*, 248 P.2d 147, 151-52 (Cal. Dist. Ct. App. 1952). There is some evidence from the submitted depositions that, when viewed in the light most favorable to Fanucchi, indicates that the parties intended to immediately substitute the new agreement for the old, extinguishing the prior contract. *See Menotti v. City of Seattle*, No. 02-35971, 2005 WL 1300994 at *3 and *8 n.23 (9th Cir. June 2, 2005). Such intent, if true, could effect a novation. *See Davisson v. Faucher*, 233 P.2d 567, 568 (Cal. Dist. Ct. App. 1951). It is for this reason that I agree that we should reverse the summary judgment. But I believe it is necessary to write further because the opinion of the court suggests a theory of novation inconsistent with California law. By conflating the concept of novation by substituted contract with other contract law principles, the opinion of the court credits certain evidence in the record as supporting Fanucchi's theory when it clearly fails to do so.

## A

My first concern is that the court's opinion inadequately differentiates between a substituted contract novation and a modified contract. The mere fact that a subsequent agreement contained several changes from the original is by no means a sufficient basis for finding a novation. The critical requirement, as the court acknowledges, is the parties' intent to com-

pletely *extinguish* the original agreement. *See Wells Fargo Bank, N.A. v. Bank of Am. NT & SA,* 38 Cal. Rptr. 2d 521, 525 (Ct. App. 1995) ("It must clearly appear the parties intended to extinguish rather than merely modify the original agreement." (internal citations omitted)).

For this reason, I find the court's reliance on *Alexander v. Angel*, 236 P.2d 561 (Cal. 1951), to be misplaced. The opinion of the court concludes that the present dispute "resembles" that in *Angel* because both cases involved changes to a debtor's loan obligations. What the opinion of the court glosses over, however, is the most relevant difference between that case and the one before us: namely, the disputes turn on different theories of novation.

California Civil Code § 1531 recognizes three separate methods for effecting a novation. The two relevant here are (1) the substitution of a new obligation *between the same parties*, with intent to extinguish the old obligation, and (2) the substitution of a *new debtor* with intent to release the old debtor. Unlike the present case, *Angel* involved a novation by way of substitution of parties, not a changed obligation between the original parties. *See* 236 P.2d at 563-64. The fact that the new parties in *Angel* changed some terms from the original agreement indicated the intent to release the original debtor, satisfying that element of a novation by substitution of parties: as the California Supreme Court explained, the original mortgagor would have had to agree to any substantial (or "drastic") change in terms if he were to remain a surety in the agreement. *Id.* at 564. In contrast, changing terms between the same parties does not necessarily imply anything about a novation by substituted contract.

The opinion of the court attempts to link the cases anyway, equating the "drastic" changes sufficient to demonstrate an intent to substitute parties with the changes necessary to demonstrate an intent to extinguish a prior contract between the same parties. This conclusion is contrary to the very case law

previously discussed by the court. In particular, the court finds it significant that *Angel* involved a revised contract with three changes in terms: (1) a change in payment schedule, (2) the addition of interest payments, and (3) the addition of an acceleration clause. Yet the opinion of the court appears to recognize that, under *Davies Machinery,* "alter[ing] the timing and amount of the payments" due on an old obligation is insufficient to cause a novation. *See supra* at 8196 (discussing 39 Cal. App. 3d 18 (Ct. App. 1974)). Under the court's analysis, then, the difference between the failed novation argument in *Davies* and the successful claim in *Angel* amounts to the addition of an acceleration clause in the new contract. *Cf.* 14 Cal. Jur. 3d Contracts § 251 (1999) ("A mere change in the amount of the debt, the terms and mode of payment, the rate of interest, or the nature of the security does not effect a novation, unless the parties' intention that it should do so is clearly shown.").

I submit that *Angel* should not be read in such a manner. The three changes discussed by *Angel* are merely indicators of the truly "drastic" change that they precipitated: releasing the surety. The opinion of the court's analysis strips *Angel's* discussion of its context, attaching qualities of a change-in-parties novation to a purported substitute contract novation between the same parties.

**B**

My next concern is that the opinion of the court does not adequately distinguish a "novation" from an "accord and satisfaction" under California law. The relevant difference is whether the old contract is extinguished upon *acceptance* of the new promise (novation) or upon *performance* of the new promise (satisfaction). *Gardiner v. Gaither,* 329 P.2d 22, 31 (Cal. Dist. Ct. App. 1958). When there is an accord, "the original obligation remains in force until the new one is performed." *Id.* (citations omitted). This distinction is relevant because, although California Civil Code § 1698 creates an

"oral novation" exception to the general prohibition against oral modifications, there is no similar express exception for an accord lacking satisfaction. Neither Fanucchi nor the opinion of the court has sufficiently demonstrated why, in light of § 1698(c), this court should give any legal effect to an oral accord that conflicts with an original agreement's requirement that any subsequent change must be in writing.[2]

Courts must presume the parties intended the creation of an accord rather than a novation. The California appellate court decision in *Gardiner v. Gaither* is instructive. After explaining the difference between the two contract doctrines, the court states:

> In the instant case there is no evidence that respondent, on behalf of his clients, agreed to accept

---

[2]The fact that United has supposedly prevented satisfaction of the alleged accord is of no moment here. Although it is certainly true that "parties to an accord are bound to execute it," Cal. Civ. Code § 1522, "a plea which avers an unexecuted accord fails to state facts sufficient to constitute a defense." *Silvers v. Grossman*, 192 P. 534, 536 (Cal. 1920). As explained in *Gardiner v. Gaither*:

> an accord may be binding on the parties, but it does not discharge the obligation it is made to satisfy until it is executed. . . . It is an elementary principle that an accord without satisfaction is not a bar, nor does it constitute a defense. In other words, if a second contract is but an accord, then the original obligation remains in force until the new one is performed.

329 P.2d at 31 (quoting 1 Cal. Jur. 2d § 34).

If Fanucchi were asserting an accord *in writing*, the case for suspending United's right to enforce the original obligation, pending timely performance, would be significantly different. *Cf.* 29 Richard A. Lord, *Williston on Contracts* § 73:33 (4th ed. 2003). But Fanucchi is not. A non-satisfied, *oral* accord cannot prevent enforcement of a written contract that expressly requires all changes to be in writing. *See* Cal. Civ. Code § 1698 (c) & (d). If Fanucchi could end-run this statute by asserting that United had prevented satisfaction of the accord, this same reasoning would apply equally to a "modified" contract, which the opinion of the court and I both agree provides no basis for suit here. *See supra* at 8192.

[appellants'] *promise* to complete three of the five structures as satisfaction of the pre-existing debts. Certainly, the *presumption is against any such conclusion*.

329 P.2d at 31 (emphases added); *see also Brown v. Friesleben Estate Co.,* 307 P.2d 388, 394 (Cal. Dist. Ct. App. 1957) (quoting and applying Restatement (First) of Contracts § 419 (1932), which states that when a contract is made for the satisfaction of a preexisting duty to provide compensation, "the interpretation is assumed in the case of doubt . . . that *only performance* of the subsequent contract shall discharge the preexisting duty") (emphasis added). Williston discusses a similar point as follows:

> Unless there is clear evidence that the accord itself was intended as the satisfaction, it must be presumed that the parties contemplated the performance of the accord as the satisfaction, for it is not a probable inference that a creditor intends merely an exchange of its present cause of action for another.

29 Richard A. Lord, *Williston on Contracts* § 73.37 (4th ed. 2003) (footnote omitted).

The opinion of the court observes that, in determining whether an accord or novation took place, the "determinative factor" is the intent of the parties. *See supra* at 8201. I agree. But authority relied on by the court for this proposition also counsels that the presumption is *against* a novation. *See Gardiner,* 329 P.2d at 31. I disagree with the opinion of the court that this presumption, present in both California cases and secondary sources, can be so easily explained away as an exception applicable only with certain anomalous factual settings. *See Williston on Contracts* § 73.37.

In my view, California law instructs courts to apply this presumption here. Even assuming that United agreed to enter

an entirely new agreement under the terms Fanucchi asserts, a court need not infer that United intended merely "an exchange of its present cause of action for another." The presumption must be that United agreed to a new repayment plan on the express condition Fanucchi would satisfy the terms of the new agreement, and that United intended to keep the old agreement alive until Fanucchi performed. Fanucchi should bear the burden of proof to overcome this presumption.

## C

As the opinion of the court observes, I find the case of *Williams v. Reed*, 248 P.2d 147 (Cal. Dist. Ct. App. 1952), to be a particularly relevant example of what is *not* sufficient to demonstrate novation. While reversing the summary judgment in favor of novation, *Reed* holds that an agreement to forgive an outstanding debt upon future satisfaction of a new obligation does not support a novation. *Id.* at 152. As the *Reed* court states:

> Plaintiff agreed to accept, in settlement of the old notes, a certain sum of money, with interest, that sum to be paid in full by [a certain date]. That does not indicate an intent to substitute the new obligation for the old, unless and until the new obligation has been performed.

*Id.*

The opinion of the court views *Reed* as simply another representation of "black-letter California law distinguishing accord and novation." *Supra* at 8204. I agree. My point is that Fanucchi cannot expect to demonstrate a novation by referencing factual allegations that are similar to those that the *Reed* court held did *not* evidence a novation. Fanucchi's own briefing states "that the repayment obligation was plainly *modified*—cease interest, and *if paid down* . . . the remainder would be waived." (emphases added). This assertion leads me

right back to *Reed*. I do not see how agreeing to waive an old obligation *if* a new obligation is satisfied demonstrates "an intent to substitute the new obligation for the old, unless and until the new obligation has been performed." 248 P.2d at 152; *see also* 14 Cal. Jur. 3d Contracts § 251 (1999) ("If the new agreement is to become operative only at a future time, or is dependent on a condition that is not performed, there is no extinguishment of the original obligation and the novation fails.").

The fact that a central aspect of Fanucchi's novation claim rests on a theory of novation rejected by *Reed* almost persuades me that summary judgment is appropriate. But *Reed* ultimately concludes that other evidence could convince a trial court otherwise. *See* 248 P.2d at 155. Fanucchi's evidence and allegations are mixed at best, but when viewed in the light most favorable to Fanucchi, possibly could persuade a reasonable trier of fact that the parties intended to immediately substitute a new contract for the old. It is for this reason that I am satisfied to reverse summary judgment.

## III

California lawmakers were explicit in recording their disfavor of oral agreements purporting to modify written contracts in situations like the one we consider: where the parties contemplated such a scenario and expressly required any changes to be in writing. The court's broad reading of novation has the potential to undermine the force of California statutory law. According to the opinion of the court, a novation looks quite similar to a modification or unsatisfied accord. I am not convinced that such an interpretation is consistent with the intent of the California legislature, California case law interpreting state law, or general contract principles.

California law indicates that Fanucchi first must prove the parties intended to extinguish the prior agreement and not simply modify it. But that is not enough. Fanucchi then must

also demonstrate that it was United's intent to extinguish the prior agreement upon acceptance of Fanucchi's *promise* to fulfill its new obligations, not upon performance (i.e., that a novation occurred and not an accord). The presumption is in favor of an accord, not a novation.

With these principles in mind, I concur in the judgment of the court.